**\*E-FILED 3/10/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REESE M. JONES, | NO. C 04 5357 JW (RS) |
| Plaintiff, | **ORDER GRANTING MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES AND REQUESTS FOR ADMISSIONS** |
| v. | |
| DEUTSCHE BANK AG, et al., | |
| Defendants. | |

## I. INTRODUCTION

This is an action seeking to impose civil liability under RICO for defendants' marketing and sale to plaintiff of what allegedly was a fraudulent tax shelter. Plaintiff Reese Jones moves to compel defendants Deutsche Bank AG and Deutsche Bank Securities, Inc. (collectively "Deutsche Bank") to produce further documents and respond to interrogatories and requests for admissions. Deutsche Bank opposes the motion, arguing that 1) it has produced (or will produce) the documents in its possession within the United States that are relevant to Jones' claims; 2) it should not be required to produce documents that may be located in its overseas offices unless Jones seeks them through the procedures of the Hague Convention; and 3) it should not be compelled to provide responses to interrogatories or requests for admission because it has been informed by the U.S. Attorney's Office in the Southern District of New York that doing so might interfere with an ongoing criminal investigation.

1

Because the United States Supreme Court has expressly held that resort to procedures under the Hague Convention is optional under circumstances like these; because the additional documents sought by Jones are relevant, particularly in light of observations as to the basis of Jones' claim made by the presiding judge in his order denying Deutsche Bank's motion to dismiss; and because the possible pendency of a parallel criminal proceeding without more will not preclude discovery here, the motion will be granted.

## II.  BACKGROUND

Jones' second amended complaint alleges that Deutsche Bank, in concert with numerous individual and entities, engaged in a scheme to market and sell investments in illegal tax shelters to high net worth individuals, such as Jones.  "Plaintiff is informed and believes and therefore alleges that in or about 1999, or earlier, defendants entered into an arrangement to market and promote various fraudulent tax strategies, *one of which was dubbed the CARDS facility*, in order to generate huge fees." Second Amended Complaint, para. 22 (emphasis added).

Jones allegedly participated in at least three CARDS facility transactions, with the eventual consequence that he "had to retain counsel to represent him in proceedings with the IRS" and the IRS and the California Franchise Tax Board disallowed the losses he claimed over several tax years. Second Amended Complaint, para. 51.

Although Jones participated only in the CARDS facility, he alleges that "the CARDS promoters may have been involved in the development, creation and promotion of other similar tax shelters, including schemes known as NPL or Dragon Coeur and/or BOSS, Son-of Boss, BLIPS, MIDCO, FLIPS, OPIS, TRACT, IDV, and COBRA."  Second Amended Complaint, para. 44.

In denying Deutsche Bank's motion to dismiss Jones' RICO claim, the presiding judge specifically noted the allegations regarding these other tax shelters and observed that together with the CARDS transactions in which Jones participated, "[t]hese multiple transactions certainly constitute a "pattern" for the RICO claim, as they are both "related" in purpose and "continuous" in that Plaintiff alleges Defendants continue to engage in racketeering activity." July 19, 2005 Order, at p.7.

2

III.  DISCUSSION

A. <u>Further Production of Documents</u>

The parties each devote substantial portions of their briefing to trading accusations of discovery misconduct and to discussing various disputes that are not directly at issue in this motion.[1] Additionally, the record is unclear as to the extent to which the parties have already reached agreements to limit the original scope of the various requests at issue.[2] Even assuming that the parties reached no agreements as such before the breakdown in negotiations led to this motion being filed, it is not entirely clear the extent to which Jones might now be moving to compel responses to the requests as originally drafted, rather than responses that would conform to the offers he made during meet and confer to narrow the requests.

Regardless of Jones' intent, the Court will not evaluate the propriety of the various requests in their original form.  Rather, in granting the motion, the Court intends only to require Deutsche Bank to produce further documents or responses that are responsive to the more limited scope of inquiry described in Jones' reply papers, or as discussed at the hearing, or as further limited by this order.

*1. Documents Regarding Other Alleged Fraudulent Tax Shelters*

Deutsche Bank contends, and Jones does not appear seriously to dispute, that all responsive documents relating to the CARDS facility have been (or soon will be) produced, except for those

---

[1] Jones' reply brief expressly withdraws that portion of his motion that sought documents "related to" Deutsche Bank's "policy and procedures," conditioned on an agreement or order that Deutsche Bank produce the actual "policy or procedure" documents within ten days. In light of Deutsche Bank's apparent concession that the primary "policy and procedure" documents are subject to production, it is ordered to produce them within 20 days.  Other matters discussed by the parties in their papers, such as deposition scheduling, were never issues raised for resolution by this motion.

[2] Deutsche Bank argues that the motion should be denied on grounds that Jones failed to meet and confer prior to filing this motion.  The Court believes that the issues raised in this motion could have been substantially narrowed, or at least clarified, had there been a more effective meet and confer process.  The Court, however, is not inclined to allocate blame between the parties for the breakdown in that process.  The Court strongly encourages the parties to find a way to make their meet and confer efforts more meaningful and productive before either side brings any further motions.

3

1  that may be located overseas, which are discussed in the following subsection. The Bank contends it
2  should not have to produce additional documents that relate to the various other tax shelters alleged
3  in the complaint, because Jones did not participate in them and cannot claim damages arising from
4  them.

5  Under the Federal Rules of Civil Procedure, Rule 26(b)(1), [p]arties may obtain discovery
6  regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .
7  Relevant information need not be admissible at the trial if the discovery appears *reasonably*
8  *calculated* to lead to the discovery of admissible evidence." (emphasis added).  The Federal Rules
9  of Evidence further provide that evidence is relevant if it has "any tendency to make the existence of
10 any fact that is of consequence to the determination of the action more probable or less probable
11 than it would be without the evidence."  Fed. R Evid., Rule 401.

12 This is a civil action under RICO, which requires plaintiff to prove not only that he was
13 harmed by defendants' wrongful conduct but also that defendants engaged in a "pattern of
14 racketeering activity"within the meaning of the statute and case law.  The presiding judge has
15 already ruled Jones' allegations regarding the other tax shelters are part of what "constitute[s] a
16 'pattern' for the RICO claim,"rendering it viable at the pleading stage.  As such, document requests
17 regarding the other shelters are reasonably calculated to lead to the discovery of admissible
18 evidence.[3]

---

[3] In *PMC, Inc. v. Ferro Corp.*, 131 F.3d 184 (C.D. Cal. 1990) the court limited a RICO plaintiff's ability to seek discovery regarding real estate transactions other than the one in which the plaintiff had participated.  Expressing a concern that a RICO claim allows plaintiffs "to expand the scope of discovery far beyond anything in dispute between the parties" the court ruled that the plaintiff would not be entitled to inquire into defendant's transactions with third parties absent "a threshold factual showing linking the information sought to the alleged racketeering activity."  131 F.3d at 187-88.  In *PMC*, however, there was apparently no reason to suspect that there had been any fraud in the other transactions that was similar to what had allegedly occurred in the primary transaction involving the plaintiff.  Here, in contrast, Deutsche Bank is not disputing that there is reason to suspect that the other tax shelters were similar to CARDS (although Deutsche Bank denies wrongdoing in any of the shelters).  Instead Deutsche Bank contends that there is nothing other than conclusory allegations to support the notion that the other shelters were conducted by the same "enterprise."  As discussed further below, Jones is entitled to further discovery as to what individuals and entities may properly be considered part of the "enterprise."  Although the present allegations may be "conclusory" to some degree, this case does not appear to present the same risks

United States District Court
For the Northern District of California

Deutsche Bank's arguments that the document requests are improper because the other tax shelters were not organized and run by the same individuals and entities fails for at least two reasons. First, the complaint does allege involvement by the CARDS promoters in creating and operating the other shelters. Even if Deutsche Bank thinks Jones' allegations are wrong, discovery to test the truth of Jones' allegations is appropriate.

Second, contrary to what Deutsche Bank implies, there is no requirement that the identities of *all* of the individuals and entities involved in a RICO "enterprise" remain constant over time or over the course of the various ventures carried out by the enterprise. Rather, there only must be a sufficient continuity to conclude that there is an identifiable ongoing structure and organization. See *United States v. Lemm*, 680 F.2d 1193, 1199 (8th Circuit 1982) ("The requirement of continuity of personnel is not absolute . . . . If it were, the ringleader could defeat RICO charges by occasionally substituting new operatives.") Here, it may well eventually prove to be the case that there was insufficient continuity among the participants in the various tax shelter schemes to deem them all part of the same alleged RICO enterprise, but Jones is entitled to discovery to determine whether or not those are the facts. It is not for Deutsche Bank unilaterally to make the factual and legal determination that the other tax shelters were separate, or to refuse to produce documents on that basis.

2. *Documents Regarding Other Individuals and Entities*

Deutsche Bank also resists producing documents related to various individuals and entities specifically mentioned in the complaint (in some cases as additional defendants), but who, in Deutsche Bank's view did not have "anything to do with the CARDS Strategy." For the same reasons that documents relating to the other tax shelters mentioned in the complaint are relevant for discovery purposes, so too are these subjects. Deutsche Bank may not refuse to produce based on its own factual and legal conclusions as to the scope of the purported RICO enterprise or as to who was or was not involved in its activities.

---

of an unwarranted expansion of discovery as implicated in *PMC*.

5

3. *Overseas Documents*

Deutsche Bank contends that it should not have to search for responsive documents that may be located in any of its various offices outside the United States as a result of document requests propounded under the Federal Rules of Civil Procedure. It argues that Jones should seek such documents, if at all, only by complying with the procedures of the Hague Convention for obtaining evidence from foreign jurisdictions.

The United States Supreme Court, however, has squarely held that use of Hague Convention procedures is optional not mandatory, and that it need not even be looked to as a first resort. *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522 (1987). As the court observed:

> An interpretation of the Hague Convention as the exclusive means for obtaining evidence located abroad would effectively subject every American court hearing a case involving a national of a contracting state to the internal laws of that state. Interrogatories and document requests are staples of international commercial litigation, no less than of other suits, yet a rule of exclusivity would subordinate the court's supervision of even the most routine of these pretrial proceedings to the actions or, equally, to the inactions of foreign judicial authorities.

482 U.S. at 539.

Nevertheless, the *Société Nationale* court did caution that American courts should "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." 482 U.S. at 546. In this case, the Court is not persuaded that the burdens on Deutsche Bank, an international entity with worldwide operations, that would arise from requiring it to comply with its discovery obligations under the Federal Rules of Civil Procedure are such that Jones should be required instead to proceed under the Hague Convention. Nor has Deutsche Bank shown how the limited document production at issue here, to consist of its production of its own documents from its own offices, would seriously impair the sovereign interests of other nations.

Deutsche Bank has pointed out that taken literally, the requests would appear to require it to search *all* of its offices throughout the world. Doing so would, of course, involve a greater burden and implicate the interests of additional foreign states. However, at least at this time Jones does not

6

appear to be seeking to compel Deutsche Bank to search beyond its United Kingdom and German offices, and this order will be so limited. Additionally, this order does not require Deutsche Bank to conduct a wholesale review of all of its documents and files in those countries. Rather, Deutsche Bank shall request that its personnel in those offices search for and produce any documents or files reasonably identifiable (by virtue of document name, label, or other identifying information) as pertaining to the subject matter of the requests at issue.

B. <u>Responses to Interrogatories and Requests for Admissions</u>

Deutsche Bank admits that it previously agreed to produce supplemental responses to interrogatories (Nos. 1, 3, 8, and 11) and requests for admission (Nos. 8, 19, 20, 23, 25, 36, 39, 52, and 54). Deutsche Bank contends that it stopped preparing those responses and should not now be compelled to produce them because "The Office of the United States Attorney for the Southern District of New York informed Deutsche Bank that it believes the process of gathering information for, and preparing responses to interrogatories or requests for admissions in this case may interfere with a pending criminal investigation. Deutsche Bank does not wish to interfere with the investigation." Coffino Declaration, para. 18.

Deutsche Bank has provided no further details. The Court has no way to evaluate the impact, if any, of a related federal criminal investigation on discovery activities in this action. Should a serious conflict arise between discovery in this action and any ongoing criminal investigation, it is for the prosecuting attorney and/or Deutsche Bank to seek relief through an appropriate motion. The mere suggestion that such proceedings might be negatively impacted is insufficient to block discovery in this independent federal civil proceeding. Accordingly, Deutsche Bank shall provide the previously promised responses within 20 days of the date of this order.

## IV.  CONCLUSION

The motion to compel is GRANTED.  Deutsche Bank shall produce any further responsive documents within its possession, custody, or control within the United States within 20 days. Deutsche Bank shall produce any further responsive documents within its possession, custody, or control from its offices in the United Kingdom or Germany within 30 days. Deutsche Bank shall produce its supplemental responses to interrogatories and requests for admission within 20 days.

IT IS SO ORDERED.

Dated: 3/10/06

RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN DELIVERED TO:**

Daniel T. Bernhard    bernhard@freelandlaw.com, santos@freelandlaw.com

Christine Chi    cchi@dbllp.com, lpmco@dbllp.com

Dianne F. Coffino    dcoffino@dbllp.com, lpmco@dbllp.com

Stewart H. Foreman    foreman@freelandlaw.com

Jennifer L. Jonak    jenny@jonak.com

William M. Lukens    wlukens@lukenslaw.com, djoc@oconnellassociates.com; jenny@jonak.com; cgladwin@lukenslaw.com

David S. McLeod    dmcleod@dbllp.com, lgomez@dbllp.com

Adrienne Marie Mundy-Shephard    amundyshephard@deweyballantine.com

Amy Lynn Rice    arice@gwwe.com, mary@gwwe.com

Megan Christine Roth    mroth@zimkalaw.com

Stephen Allen Watson    swatson@watsonlawgroup.com, gbloom@watsonlawgroup.com

Matthew S Weiler    mweiler@deweyballantine.com

Jeffrey R. Witham    jwitham@dbllp.com, hgutierrez@dbllp.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 3/10/06**                                                    **Chambers of Judge Richard Seeborg**

                                                                      **By:      /s/ BAK**